And how can that possibly be the case when their decision is exactly the same as the decision by three other federal judges? And it's FEMA's view. How can the mere act of deciding I view coverage one way or another be affirmative misconduct under these circumstances? How in the world is our decision on coverage have anything to do with the separate question of whether the insured met their own legal duties to present the claim? We're giving our view upon that claim which is presented. He's got to present the claim, and if he disagrees with us, he presents that, preserves his claim, and presents it to you. Did he ever file a proof of loss? Did they file a proof of loss? He did file a proof of loss for the undisputed portion of the claim, and that was fully paid. What was not filed was any proof of loss for the debris claim. Congress, at Section 4019 of the Act, delegated exclusive rulemaking authority to FEMA to make these rules for claims adjustment. It has to be by regulation, and it's in the policy, which is a regulation. It's in Article 7J of the policy. It lays out for everybody these are the rules. These rules have to work whether we're dealing with a small incident of maybe 10,000 claims or a magnificent, huge incident like Sandy or Katrina where you have 150,000 claims. And they have to work uniformly all across the United States. What the lower court did, with all respect, is substitute his view for FEMA's as to what ought to happen. He decided that what has to happen in every claim is that every adjuster has to write up all of the flood damage, whether it's covered or not. The problem with that is if every adjuster has to do that, that's going to terribly slow down the process. Mr. Dixon, with all respect, only cares about himself. We need these independent adjusters to get his claim written up and then get to that next flood victim. There are thousands of them waiting to be helped. If he wants to present a claim for something beyond what the trained adjuster thinks is written up, he can write that up. My God, he's a lawyer. He could have done that himself, and that is what the rules say. Counsel, in your brief and here today, you've reminded us of the appellee's status as an attorney, but you haven't cited any authority that makes a bit of difference in terms of how this case is to be analyzed legally. It makes a difference on the estoppel claim. If this were to be this country's very first case where you were going to uphold a claim of estoppel against the federal government's treasury and you're dealing with what did the plaintiff know, what should he have known, how can a lawyer say they didn't know? Where's the legal authority for that? That's just me as a lawyer saying I've had to uphold these strict rules all across the United States for almost 30 years. People who are not lawyers. You have cited no legal authority. No, sir. Your answer is I don't have legal authority for that. It's a gut feeling. Turning now to the estoppel portion of the problem, where in this record is there any evidence of misconduct by my client? They performed exactly as they were trained to perform. The lower court ruled that there was this egregious behavior, cries out for justice. Well, he's treating this case as if it were a tort case. And even in a tort case, you have to lay out the duty, then the breach. Nowhere in the court's ruling does he lay out what ought to have happened. He didn't go into FEMA's manuals, into FEMA's regulations and say, okay, these guys didn't follow what FEMA told them to do. He just goes straight to I decide this is wrong. Well, if every lower court judge everywhere in the country all could do that, then we'd have no uniformity of decision and we'd violate the appropriations clause. In our briefing, at page 34 of the opening brief and beginning at page 23 in the reply brief, we go through the district judge's six factors for determining affirmative misconduct. And we explain in detail why each one fails. I've been curious because I didn't find a clear statement about whether this debris had come from the floods, had brought it from some other land or whether it was their own debris or a mixture. It is non-owned debris that was carried with the flood. So everybody's in agreement that this was not Mr. Dixon's property spilled forth from inside his house onto his property. This is stuff that was carried with the water onto his property. Which brings us to the coverage question. Congress at 4013A of the Act told FEMA, you make the rules on the scope of coverages, what risks you're going to take in, what you're going to not take in. There are all kinds of risks that do happen to flood victims that are not covered under the flood program. Basements, very limited coverage. Elevated buildings, very limited coverage. Slabs that get cracked in flood, limited coverage. Non-owned debris, no coverage. It is a rare day when a flood victim is truly made whole by the National Flood Insurance Program. It just isn't designed that way. Here, you've got a clear statement in the policy that land is not covered. You then have the coverage that says we will not pay you for non-owned debris unless it is on or in insured property. Well, the land around the structure is not insured. Sure, it's property, but it's not insured property. This isn't like your homeowner's policy or your auto policy. All that is insured are the four walls of your dwelling. That is it. And I would ask the court to ponder the cost of doing otherwise. You can't have a circumstance where the flood gets to the dwelling but foregoing over the land. So in every single flood claim, if the court ruled, oh, no, under the SFIP, the U.S. Treasury is exposed to all damage that occurs to all land around the house, that will apply to every flood claim. Is there essentially one flood policy? Yes, Your Honor. And this is it? Well, there's three forms. There's the dwelling form, which is A1 in the regulations. There's a commercial property form, which is A2, and there's a condominium form. But for residences, there's only one form. It's called the standard flood insurance policy, and literally all millions and millions of people that have flood policies, they all have this exact same policy. So a ruling as to the scope of coverage is a big deal. Three federal judges have looked at this same coverage provision and said, no, this makes perfect sense. We understand what FEMA's doing. We're going to enforce it. What's the significance of the fact that the Supreme Court didn't take cert? Your Honor? What's the significance of the fact that the Supreme Court didn't take cert? Personally, I don't take any significance there. They take so few. I can't imagine that tells us much. I really wouldn't be able to glean from that, Your Honor. But the holding we are asking of Your Honors today is a complete reversal of the lower court. That simple, Mr. Dixon did not present his proof of loss. There's no misconduct here. He was told well before the deadline for a proof of loss running that we were denying his claim. He could have presented a proof of loss if he wanted. There's nothing in the record that we somehow prevented him from doing, submitting his own. People do it all the time. In the perfect world here, he failed to file a proof of claim as it relates to the dervice that was brought up by floodwaters passing his property. Correct. And is there anything he could have done? Or he could have written thousands of pages of the reasons why and he would have still advised the insurance company to do not pay because it is not covered. Is that simple? It is correct. I would point out, though, we deny parts of claims all the time. With the insured, if they want to challenge that claim denial, they submit their proof of loss. We evaluate it. They may be right. A lot of times we'll look at, wait, they're correct. And then the claim is paid. If we disagree to preserve their claim and have the court look at it, they've got to get that proof of loss in with the required documentation by the date. If they do that, then they have the right to invoke the right to sue clause of the policy and come before a federal judge and ask him to grade our paper. But to come before you, they've got to do their stuff first. I'll reserve the balance for rebuttal unless there are any other questions. Thank you, Your Honors. Mr. Johnson? Thank you, Your Honor, and may it please the court and counsel, my name is Ariston Johnson. I'm here with my client, who is, in fact, an attorney of record in this case, Mr. Thomas Dixon. His wife, Sherry Dixon, is not here with us today. But I'd like to just answer a few of the questions that were raised by counsel. One is, where in the record is there evidence of misconduct? Well, it's throughout the record, but you need look no further than page 187 of the appendix filed by the appellant to find that their letter, dated September 22, 2011, says, Please be advised that the following list of items we found are not covered. And then later in the letter, it says, There's nothing in this letter that says anything about a proof of loss form. American Bankers Insurance Company of Florida's adjuster, who they say was trained specifically to handle this type of flood claim, filled out the proof of loss, presented it to Mr. and Mrs. Dixon to sign, and then sent it in. They had no role in preparing it. And if you look at the proof of loss form, which I don't remember the page, but it's in the record, it doesn't have any space to add anything. It's typewritten by the adjuster. What about the language that informs policyholders that the work of the adjuster is a courtesy and not to be relied on as if they were actually the agent of the customer? Your Honor, it certainly is not very courteous to leave no space to add anything. And yes, it's not so much that we're relying on the adjuster to fill out the proof of loss form, but it's the fact that the insurance company sent a letter saying, And that's exactly what we did. We did exactly every single step that the insurance company told us to take, we took. And when we filed that suit, they defended it on the basis that we shouldn't have listened to them, we should have not trusted a thing they said because they were lying all along. And that's just not the way to run an insurance business. It's not the way to run anything. So if you get past that and get to the merits of the interpretation of the policy, have there been any federal courts that have interpreted this policy where debris removal on, other than in or upon the dwelling, has been required to be covered? Your Honor, I haven't found any, certainly there are no decisions binding on this court. And I did look in other circuits and I found nothing that says whether or not a claim of this type is covered under this policy. And certainly this won't be. How long has this been the national dwelling policy? That I don't know, Your Honor. Mr. Nielsen certainly knows more about flood insurance than I do. He's been working in this area specifically for a very long time. Would it be safe that it's probably before Katrina? I would think so, Your Honor. And I do know this much. Whatever happens today will have an impact in the future because certainly there is a great amount of debris removal to be done from Hurricane Sandy. That was a debris storm more than anything. And so the question is, is removal of non-owned debris, and Mr. Nielsen misspoke and I don't believe he intended to. He said that there's no coverage for non-owned debris. And that's not right. What the coverage says, it's actually quoted in that letter at page 187 of the appendix, is we will pay the expense to remove non-owned debris on or in insured property and owned debris anywhere. So there is coverage for non-owned debris. It's just a question of where it's covered, removing it. And the insured property here is 9922 Island Road, Bismarck, North Dakota. That's the address from which the debris was removed. And there's nothing the argument here that the insurance company has made is that we do not cover any of the following. Land. Well, the problem is that we're not asking for coverage for land. We're asking for coverage to remove non-owned debris from the insured property. And it's that simple. There is coverage. I would like to point out something. In the reply brief, the American Bakers Insurance Company of Florida raised the issue that we, the appellee, raised for the first time on appeal the possibility that the Treasury might not have to pay this claim. And I did raise that. And there's a reason that wasn't raised below. Because the first time that anyone said that the Treasury would pay the claim was in a motion to waive the supersidious bond on appeal filed by American Bankers Insurance Company. And that's their argument is that it wasn't raised until then, so we can't decide it today. Well, my client doesn't have a judgment against the Treasury. My clients have a judgment against the insurance company. And if the insurance company has a judgment against it, it's between the insurance company and the Treasury as to whether the Treasury pays it. It's not up to this court. It's not up to me. It's not up to anyone in this room. It's up to the insurance company to negotiate if they want it to be paid. We have a judgment against the insurance company and no one else. And certainly if the Treasury were implicated, that should have been brought up in the lower court by possibly by saying there's an indispensable party that's not here, we need to fill that chair and get someone from the government here to defend the Treasury. It wasn't an issue until the appeal. And the crux of the appellant's argument to this court is that because Treasury dollars are at stake, the lower court must be reversed because there can't be a stop against the Treasury. But that's not what we have. We have a stop against an insurance company that deliberately misstated how to proceed with this claim in writing to the insured. The insured did everything that they were asked to do by the letter. And the misstatement was on page 187 of the appendix. That's the most clear version of the misstatement, Your Honor. There is other evidence in the record that these things were said in person and by email. But this is by far the most clear evidence of that misstatement. And there is nothing in the record indicating you should file a proof of loss claiming this additional item. The only place to find that is in the FEMA regulations. And the people that know the FEMA regulations better than my clients would be that trained adjuster who's trained by FEMA to handle these things. And that person didn't bring it up. If you have a trained adjuster, and I'm not saying that there's some special fiduciary duty that that adjuster had, but certainly everyone owes a duty to everyone else not to deliberately mislead them to their misfortune. Especially when the person doing the misleading is doing it on behalf of an insurance company for the purpose of avoiding a procedural defect. This isn't a case, and I said this in the brief, this is not a case where my clients were not entitled to the coverage and they're trying to get something they weren't entitled to. This is a case where my clients were entitled to the coverage, and they were misled to avoid getting it. And there's a big difference between those two things. Were any inquiries made as to what was required in order to obtain coverage or payment in benefits for debris? Yes, Your Honor, the inquiries were made and the answer is found in several forms, but most clearly at page 187 of the appendix. My clients wanted to know, we want this debris removal covered. It cost us a lot of money to take all this debris off of our yard. So how do we proceed with that? What's the communication that went from your clients to the company? Your Honor, I don't have enough time to scour the appendix at this time, but there were emails exchanged between my clients and the company that are found in the appendix. And those are generally exhibits to the affidavit of my client, which begins around page, I think it begins around page 119 of the appendix. And that page 187 is part of that. It's one of the exhibits, number 45 to that affidavit. And that contains the evidence that was before the district court, much of it, and also before this court. And the chain of communication other than oral communication by telephone or in person, of course, is omitted, although there is some information in the text of the affidavit itself explaining that. But most clearly, the response is, you have one year from the date of this denial to file suit. That's what we did, and here we are arguing whether that was the right thing to do. You can't mislead someone to create a procedural defect and then rely on that procedural defect to defend a case. That's not appropriate for the insurance company, and it wouldn't be appropriate for the Treasury either. The federal government cannot engage in that kind of misconduct. But we're not here against the federal government. We're here against American Bankers Insurance Company of Florida, which is not the government. They are a subsidiary of another corporation. These are profit-seeking entities. They are subject to the judgment of the district court. I have about five minutes left. I don't have a terrible lot more to say. If there are more questions, I'd be happy to try my best to answer them, of course. I might ask this question. When your client was purchasing the insurance, did they have an option of which of several companies they would pick to be the actual carrier of this policy? Your Honor, I don't believe that they did. And I also don't believe that there's evidence in the record saying whether they did. So I can't answer that question to the court. But I'm lucky I live on a hill, so I don't have personal knowledge of flood insurance either. Oh, I would like to respond to one thing that Mr. Nielsen argued. And that's that if this court affirms the district court, then adjusters for flood insurance claims will have to write up non-covered items. And that's not the case. That's not the consequence of an affirmance of the district court affirmation. That's the word. If the district court is affirmed, the adjuster doesn't have to write up non-covered claims. The adjuster simply has to tell the truth to insurers about how to present claims that the adjuster thinks are not covered. That's what we're asking for the adjusters to do, and that's what the adjuster in this case did not do. Was the adjuster an employee of American Bankers? I don't know, Your Honor. I believe that the adjuster was an independent contractor hired by American Bankers to adjust claims in this region. American Bankers is a large company. When I was researching, I found— They weren't government employees, were they? No, Your Honor. Everyone involved in this case is a private individual or a private corporation. There's no government agency or agent involved anywhere in this case that I'm aware of. So, in summation, there was coverage for this claim. My clients are entitled to payment for that coverage. But much more importantly, American Bankers Insurance Company of Florida is not entitled to defend a claim made against it on the basis of a procedural defect that it created by informing my clients in writing of what to do and then punishing them for following that instruction. Would you restate why you say there's coverage? Yes, Your Honor. I'd be happy to. In the policy, it says we will pay the expense to remove non-owned debris on or in insured property. That provides coverage. Then we look at the exclusion, and the only exclusion that American Bankers Insurance Company of Florida has identified upon which they are in life for denying this coverage is we do not cover any of the following property, colon. Item 6 is land, land values, lawns, trees, shrubs, plants, growing crops, or animals. None of those things is what we are claiming coverage for. We're claiming coverage for removing debris. From the insured property at 9922 Island Road, Bismarck, North Dakota. That's the property identified in the declarations of the policy. Nothing in the declaration says the building at 9922 Island Road. It says 9922 Island Road is covered. Is there any part of the debris that's claimed for benefits or coverage on or in the dwelling? Your Honor, I don't believe that. Any of that, I guess $49,000 or so, was any of that spent on what was on the house or in the house? Your Honor, my knowledge is that, to the best of my knowledge, no. The debris didn't make it into the house due to a valiant effort to fight this. It was a deluge more than a flood. This was a flood that didn't come up, crest, and come back down. This was a flood that inundated the entire area for a long time, 40, 50, 60 days. And my client had to reach his house by boat, by airboat. That was the only way to get there because the entire area was inundated. You can even find online pictures and video, even, of the house next to my client's house being spun off of its foundation and into the river. It was a devastating and long-lasting flood that deposited a great amount of debris. But I don't believe it deposited debris inside of the dwelling. Thank you. With my limited time, just a couple of responsive points. Counsel asked you to look at page 187 of the record. I would ask the court to look at 169, a letter from just one week earlier, where the adjuster specifically told Mr. Dixon that FEMA had extended the proof-of-loss deadline by 60 days. So when we sent that denial-of-claim letter, he still had time to get his proof-of-loss in. And look at the e-mails at the appendix 175 through 177. The adjuster did tell him, you still can't submit a supplemental claim. This was discussed between them. Counsel can't answer the question, what is the lie? What is the misstatement? He finally admitted what he's really claiming is a failure to inform, because there is no lie in this record. But he was informed. He was informed by the regulations and by these letters. The issue of federal funds was raised in our answer and in everything we ever filed. That is one thing we tell federal judges from the get-go. To say that that was never raised in this record, it's all over the record. The coverage question, is the insured property coterminous with the property description of the land? You've got a declarations page that gives a municipal address. Does that municipal address have anything to do with what is the parameters and the scope of the insured property? One's got nothing to do with the other. The policy expressly states, separate from the exclusions, that the land is not covered. And to say that he's not claiming damage to land, come on. The silt, the trees, the debris was on the land, not on the house. Has your company ever paid out a claim under similar circumstances, where there is no so-called building on a piece of land that has an insurance policy affixed to it? Absolutely not. And if in the thousands and thousands of claims something like that ever did happen, it is a pure mistake. But I, in the 30 years of doing this, have never heard of, and I represent virtually all of these companies, never heard of anybody paying what is being asked for here. This is always a definitive no. Consistently across the country, the adjuster is not an employee of the company. He is an independent adjuster retained by an independent adjusting company that is separately paid by FEMA on a separate fee schedule. FEMA pays for these adjusters. FEMA trains the adjusters. It is FEMA that tells these adjusters their marching orders and what they're supposed to be doing, not the companies. You don't have 100 different insurance companies giving thousands of independent adjusters all different marching orders. We've got one general, and he's the director of claims at FEMA. He's in charge of the rules. In terms of buying the policy, you can buy the policy from any one of any number of different companies and from FEMA. It's going to be the exact same terms of the policy that's in the regulations, and it's going to be adjusted pursuant to the exact same rules. If Mr. Dixon had bought his policy directly from FEMA, the exact same thing would have happened without any change whatsoever. We would like to think we would get better service, but legally everything is exactly the same. Might the Court have any other questions? It appears not at this time. Thank you, Your Honors. Oh, that letter that I referenced that does tell them of the extension, he was referencing document 187. I referenced document 169. Thank you, Your Honors. Thank you both. That's a very interesting case.